The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, oye, oye, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention. The Court is now sitting. God save the United States and this Ms. Richman, when you're ready. May it please the Court. My name is Patricia Richman and I'm here today on behalf of Robert Valladares. This case presents a pure question of statutory interpretation. The First Step Act exclusion at issue in this case states that it requires a conviction for a drug distribution offense resulting in death. It makes no mention at all of conduct. Mr. Valladares was not convicted of that offense, so under the plain language of the First Step Act, he is eligible to earn time credits towards early release. The text, context, and purpose of the First Step Act confirms this reading of the statute and compels reversal of the lower court. Turning first to the text, the First Step Act defaults towards eligibility to earn credits towards early release. All prisoners in the Bureau of Prison are eligible to earn credits. Only those who are serving a sentence for a conviction that is specifically listed are ineligible to earn credits. Before you get too far into the legal argument, which I think I understand, I want to make sure I understand the facts. The defendant was indicted and then there was an information. The indictment was a death-resulting offense. The information was not death-resulting offense. Is that right? But his judgment refers to a superseding information? I assume that's referring, there's only one information, but it wasn't clear to me. Is that the only information that exists? When it says superseding information, it's like the superseding charging document, but it's actually only the first information. Am I thinking about the right document when I look at the information that is just a B1C offense without the death resulting? Yes, Your Honor. Turning back to the text of the provision, in general the exclusions that are listed within the list of exclusions, they are listed by statute of conviction. The exclusion relevant here, which is paragraph 57, twice states that a conviction is required. It says if a prisoner is ineligible if serving a sentence for a conviction for an 841A offense, and in the Controlled Substance Act, 841 is the act. In the case of a conviction, it states it again, under for an offense described in some paragraph A, B, or C of that section for which death or serious bodily injury results. So turning just to the statute, starting with the word conviction, it is well established that the term conviction refers to the elements of an offense. And we know that the subparagraph of the Controlled Substance Act relevant here contains different types of offenses. It includes the default for offenses with a Schedule I or II substance where no quantity or type is alleged, but it also includes the separate offense for death resulting. So it includes different offenses, different sentencing ranges. That's why it's very important that in this exclusion, Congress adopted verbatim the language from that subparagraph, from 841B1C, which as Justice Scalia had explained four years prior, requires a plea of guilt as to two elements. First, knowing or intentional distribution of a controlled substance, and second, that death was caused by or resulted from the use of that drug. And we know that when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language indicates as a general matter the intent to incorporate its judicial interpretations as well. But moving even beyond just the sentence, the provision here, and looking at the overall context. Before you move past the sentence, the for which in this sentence, this sort of relative pronoun phrase, for which, which comes before the death resulted, do you have a view on what noun that's modifying? For which, the which refers back to some noun. There are a couple of possibilities. But do you have a view on when it refers to for which, what part of the statute it's referring to? Yes, Your Honor. I believe it is referring to the phrase conviction for an offense described in A, B, or C. Each of those subparagraphs, as Your Honor knows, contains the same language, which established this freestanding offense for death resulting. You think it modifies the entire phrase, not conviction or offense? You think we have to read that prior phrase as a total? I think that if you... We naturally would think it would refer to one, to a noun, right? Not to the entire clause. I mean, I guess maybe it could, but it seems more naturally to refer to either, I think the most too obvious answer is either conviction or an offense. Do you have a view as to... You think it refers to the entire clause and not to one of those particular nouns? Your Honor, I would agree that if it refers to one of these words, it is either conviction or offense. And I believe it's conviction. Because if it did not modify that word, then why is that word in this sentence? The government's reading, which asks for Mr. Valadares to be held ineligible because of his conduct, would read that word out of the statute. That's a little odd, right? Because the whole section has a description that it's talking about a prisoner serving a sentence for a conviction under any of the following provisions of law. So conviction's redundant already, right? By definition, we're talking about someone who's convicted under the description that's being described. I mean, it seems like it's necessarily redundant, I guess is what I'm getting at. I'm not sure that's a problem for you. I'm just saying to point out a redundancy is odd because the entire statute is limited to prisoners who are serving a sentence for a conviction under one of the following. And then the following then talks again about the conviction. Thank you, Your Honor. I think there is a reading that avoids the redundancy. The first part of the provision says, refers to an 841A offense. And, of course, that portion of the Controlled Substance Act refers to the act, the conduct. And then it refers to a conviction under A, B, or C. And because different elements are required to establish a death-resulting conviction, it makes sense to see that repetition here. In the other Controlled Substance Act provisions, it does not have the same reference to the act. It only refers to the penalty provision. So here it appears that Congress took pains to make clear that this was a conviction and confirmed that by echoing the language, adopting it verbatim from the relevant provision of the Controlled Substance Act. Even if that was not enough to persuade the court that Mr. Valadares should be eligible to earn credits, the context of this provision confirms it. And one doesn't need to look any further than this list itself. In fact, a neighboring provision right above, which I'll refer to as the pipeline provision, and that's paragraph 57. There, that makes overt reference to conduct creating a serious risk of bodily injury or death. Another provision, which I'll refer to as the maritime provision, that's at subparagraph 46, does the same. And when you compare these provisions to the one at issue here, neither of them use language that's drawn from the statute that it is referencing. They do not use elemental language as the provision relevant here does. In addition, they specify they use the word conduct. When Congress wanted BOP to consider conduct, it said so. And that's evident through these provisions. Other provisions in the list, which involve exclusions under the Controlled Substance Act, confirm similarly that when Congress wanted BOP to consider conduct in Controlled Substance Acts, it generally referred to findings by the sentencing court. So Congress was able to specifically incorporate and direct BOP on how to determine, that is by looking at the PSR, the pre-sentence report, whether or not a person should be ineligible, and required judge-found facts, like a leader-organizer enhancement, the case of a mandatory minimum methamphetamine or heroin offense. So together, this shows that Congress was carefully tailoring the list to give clear direction to BOP. And this conforms to the overall purpose of the First Step Act. The government points out that it's Bureau of Prisons' job to administer a statute. In this case, Congress wanted to make clear exactly what BOP could and could not do. In contrast to prior credit programs that Congress had created, it determined who would be or would not be eligible. And it wanted BOP to be able to apply that list to the people in its custody. The First Step Act, in general, created a program with broad applicability to correct correctional spending, control correctional spending, and manage the prison population and reduce recidivism. It also divested BOP of discretion, which I referenced a moment ago. And it did so to ensure that this would have a meaningful impact. And so this purpose supports a narrow reading of the eligibility provision and supports a reading that only individuals who have the conviction referenced in the exclusion should be ineligible for credits. So unless the panel has other questions for me, I'll conclude by saying Mr. Valadares respectfully requests that this court reverse the decision below and direct the district court to issue a writ of habeas corpus directing the Bureau of Prisons to classify him as eligible to earn credits. Thank you, Ms. Richman. Mr. Nogue. Good morning, and may it please the court. My name is Max Nogue. I'm an assistant United States attorney for the Northern District of West Virginia, and I represent the respondent, appellee, warden of FCI Hazleton in this matter. The First Step Act amended federal law to allow only certain eligible prisoners to earn time credits each year to be applied towards service of their sentences. These credits are not automatic entitlements. Under the FSA, the Bureau of Prisons is responsible for determining whether a prisoner is eligible or ineligible to earn those time credits. Making that determination, the BOP must look to the exclusionary provision set forth at 18 U.S.C. 3632-D4D, which deems a prisoner ineligible to receive time credits if he is serving a sentence for conviction under one of any 68 enumerated provisions of law. Relevant here is that 58th exclusionary provision, which the warden has permissibly read in three distinct parts. First, a prisoner is ineligible to receive time credits if he is serving a sentence for a conviction under 21 U.S.C. 841 relating to distribution of a controlled substance. Second, in the case of a conviction or an offense described in subsection B1AB or C of 841. And third, for which death or serious bodily injury resulted from the use of that substance. Here, the petitioner pled guilty to distribution of federal... Tell me what you think which, the sort of reference pronoun, like what do you think which is referring to? I think a natural reading would reference for which back to relating to a distribution of a controlled substance for which death resulted. It would relate back to that first part of the statute. Tell me why you think the relative pronoun phrase points back to that clause? That seems like an odd clause to point back to. It's a natural reading. I mean, there's an argument... Let me understand why. It's not natural to me, but go ahead. The conviction itself is for the 841A. There's a dispute whether you can be convicted under the penalty provision, but it would refer back to the actual offense that was the conviction. And that's how we have read the statute in those three distinct parts where the... In the case of a conviction for an offense described in B1C, it's poorly written, but there should be commas there setting it apart, and the for which would relate back to the actual 841A offense. He says poorly written, right? I mean, that's what you said, right? Yes, that's our position. Right. So that means the rule of lenity ought to be read in favor of the appellant here, right? We would not take the position that the rule of lenity would apply. Although it's poorly written, we still believe that a plain reading of the statute. Well, some very smart, not me excluded, but very noted jurists ask questions that wasn't natural to Judge Richardson. So why is that not an ambiguity that ought to newer to the benefit of the appellant? But Judge, there are at least three district courts, including the court below, that have found that a plain reading supports that there need not be a finding of criminal liability. Are any of those courts binding precedent for this court? No, Your Honor. I didn't think so. Go ahead. Do you have a view? I actually don't know the answer to this. Does the rule of lenity apply? I mean, it certainly applies in a criminal statute. And this is like a criminal adjacent statute. Do we have instances where it's been applied in these types of good time credits? I mean, the Supreme Court's had a couple of these good time credit cases. The only one I can think of is maybe 10 years ago now or more. But they didn't seem to apply the rule of lenity in addressing good times credits. Do you have any view as to whether the rule of lenity applies in these sort of like, really like BOP governing regulation or laws as opposed to actual criminal statutes? We're not familiar with any case where the rule of lenity would apply in this situation. Does the United States take a view on whether it does apply or does not? The warden of the FCI, Hazleton, would take a position that it does not apply in this case. And in part because it's not a criminal statute. This is a post-sentencing statute. The whole idea of the rule of lenity is if we were going to be picky about it, then it wouldn't apply any time. The whole idea is that when there's ambiguity and, quote you, poorly written, and this is about as criminal as you can get, it determines how long a person is going to stay in prison. I mean, it's like as criminal as a misdemeanor for a traffic ticket, right? But not when it deals with how much time you're going to spend in a federal institution. He pled guilty to an offense, right? And it did not include anything about resulting in death. So now you're going to say that, whoa, now you're in prison. We're going to take that and say, interpret this to mean that it's both. It certainly, I mean, I think not only is it in terms of ambiguity, I think it's reading that it only applies. As counsel, I think, aptly pointed out, when Congress meant it to include something else, it said so. Yes, Judge. Go ahead. The way we would read the statute is not that the language here was intentionally written to preclude the BOP from looking at uncharged but relevant conduct. Rather, of the 68 provisions, there are a handful. But how do you explain the maritime paragraph and the pipeline paragraph where it says conduct that led to the conviction? I mean, so there's a difference there, as counsel stated. How do you explain? We acknowledge there's a difference. It's a very clear difference, but it's a different statute. It criminalizes different, more terroristic-type crime, and here we're dealing with a drug distribution statute. We would take the position that the context of the statute, when read as a whole, would not seek to preclude the BOP from looking at uncharged conduct in this situation, where the petitioner here pled guilty to, obviously, an A41A offense, and as it was contemplated in the sentencing, in order to avoid the 20-year minimum for distribution resulting in death. However, in the plea agreement, the petitioner stipulated to the conduct that he distributed fentanyl to an individual who was a friend of his, who was known to him, that just left rehab two days prior. And the individual passed away due to an overdose, the use of that fentanyl, and then the petitioner went on dealing the exact same batch of fentanyl. So we would not read the statute in separate parts. We would read it as Congress intended to preclude persons who engage in conduct that pose a danger to society from receiving time credits. Although they did not say that in this paragraph. I just think it's striking that the other paragraphs say conduct that led to the conviction, and this one here says conviction. It does, Your Honor, yes. And a better writing of the statute may have said, for which there was a finding of criminal liability as to death resulting or bodily injury. But it doesn't say that. And it, as I mentioned, at least three other district courts and the court below have agreed. And there's only one court, the LaVey Court in the Eastern District of New York, that has said, well, it's unclear, the statute is unclear, so we're going to look at certain canons of construction. And if this court does find that it's an unclear statute, we would ask that a pragmatic approach be taken to looking at the entire text of the statute, not just the individual 58th exclusionary provision. What's the pragmatic part? Mr. Nohia, you, as most lawyers do, you gave sort of a jury argument in terms you laid out the facts. Yeah, we know that about fentanyl death, you're right. But you representing the United States, that's what you represent here. You had a chance to seek a conviction that included resulting in death. You found that you allowed the plea, you accepted the plea agreement that he would be convicted of something less, correct? I represent the warden of FCI Hazleton. I mean what I mean, but the government, you know, the government, right? Right. You had a chance to do that, then you want another bite of the apple. It could have been pursued, right, as a conviction for that, but it wasn't. That's correct. So now you want to read into it like, well, because you laid out the facts and they are there, a person died. But we have to construe by the law, right, not just by our wits in that sense. Because you said take a pragmatic approach, that's what you said. Yes, sir. Go ahead. The four corners of the plea agreement do not contemplate the First Step Act because it's a collateral consequence of a plea and the conduct that a defendant would stipulate to and have an opportunity to object to in a PSR. It is not the type of statute that can be negotiated. It is a post-sentencing statute that either deems a prisoner eligible or ineligible. And as I said, it was not contemplated in the plea agreement. Can I just go back to the point you made earlier? If hypothetically I disagreed with you and I did not think for which could refer back to the relating to manufacture piece, but instead refers back to the noun offense in the sentence, in the case of a conviction for an offense, dot, dot, dot, for which death resulted, and I thought the which was a reference to offense. Do you agree with that move that you're reading is untenable? Is this the disagreement we have or do you think even if the which is referring to offense, do you have an argument that you're reading is somehow plausible under that grammatical understanding? I think it could be plausible if the for which referred back to the offense. And help me understand how could that be? Well, if an individual were sentenced under B1C for which a death did not result, as was the case here, that just by nature of the actual document, the conviction, it would still be a B1C even if the individual had pled guilty to death resulting. Your read is in essence that when it says for which in this particular case death resulted, and you're suggesting your opponent is reading this as saying an offense for which by its nature death resulted, by the nature of the offense, this is the Davis line, right? But your argument is really sort of a categorical, circumstance-specific approach. And so the offense, in your view, could still be circumstance-specific? Yes, it could be. And I think at least in this particular case, the conviction, the judgment is vague, and it required the Bureau of Prisons to look to that uncharged conduct, what other conduct was stipulated to. Because if it were just by nature of the statute, it would be a conviction under A41A, and the sentencing provision would be the same. But you agree that in theory, had you convicted this defendant under the indictment for count one, that that conviction would be for an offense that categorically satisfies this statute. Yes, I would. There's no doubt in that instance. You're saying beyond that, we ought to also just look at what happened and have BOP decide, a la Burrage, whether there was but-for cause that occurred as a result of the consumption of the narcotics that were distributed. Like that's the BOP's judgment. They just look at the evidence, and they decide, in our view, a la Burrage, we decide that there's but-for causation here. And so that's the decision that's just been vested with the guy at the intake center at FCI. No, I would not agree with that, Your Honor. How else would it be decided? I mean, that's what you did here, right? You presumably said you looked at the facts that occurred here, and you determined that his admissions were sufficient to establish but-for cause that death resulted. Under these particular facts, where the petitioner obviously pled guilty to a lesser included, but stipulated in a plea agreement, which was then reflected in the PSR. But your reading wouldn't matter if that wasn't true, right? So imagine that he had not been charged with death resulting, right? But he just pleads to a B1C offense, and the intake guy at FCI says, I know, but I went back, and I read the PSR, and there was some trial testimony, and I read some trial testimony, and I get the government didn't charge it. I get the jury didn't find it. I get the judge didn't impose a sentence as a result on it. But in my judgment, there was a death that resulted from. And so as long as that intake guy at FCI makes that judgment, under your reading, this person would be denied good time credits, a hypothetical person, not this defendant. I would not agree with that because those are not the facts before us today. I totally understand. That's why it's called a hypothetical, right? So a hypothetical means a case that's not this one, right? So this is a hypothetical that is required, I think, based on your reading, right, that this is just a judgment that's being made by the intake guy at BOP. He just gets to make the judgment of whether but-for cause existed for the death resulting. And here, your point is, we got really good evidence of that. All right, fine. But the point has to be, I think, is that even if you didn't have as good evidence, BOP just gets to look at the record and make its own judgment. I mean, that might be a totally acceptable. I'm not saying that you should run from that, right? I'm not sure why you're running from that. It takes me that your position is totally consistent with that. I just want to understand that you do think that both of those would apply under your reading. I think it would apply to the extent that Congress has directed the Bureau of Prisons and at least four different exclusionary provisions to look at uncharged conduct in the Maritime Statute, in the Pipeline Statute, as well as the leader or organizer. Pretty specifically there, but yeah. Correct. So it's not untenable, I think, to conclude that the Bureau of Prisons may need to take that analysis in certain hypothetical situations. However, here, it's very clear. There is no dispute that this conduct occurred. But your position, just to be clear about it, your position is that even if it wasn't so clear, BOP is entitled to make that judgment based on its evaluation of the evidence to determine whether the but-for cause has occurred. I think for purposes of the hypothetical, we would agree that the Bureau of Prisons would take whatever analysis it would under those other four exclusionary provisions and apply it here. Notwithstanding, the language of the statute is not there. You'll just apply it over here. HodgePodge. Well, let's pick it up. I thought Congress can speak the way they want to speak. I think Justice Scalia said it's not what they intended and what the history was of it, legislative, it's what they said. But they didn't say that. As a matter of fact, what my dear colleague, Judge Richardson, just asked you, you started off that way. You started off saying, yeah, Bureau of Prisons is left to make these decisions, and they made the decision. But here in this case, this is a troubling being beyond this because, as I recall, in the record, and the government was sensitive about this, they said, listen, well, I don't know what may happen in terms of the death situation here, but if the court goes away, you may have some room to withdraw your guilty plea if this thing turns out to be way up here to 300 months versus 100. Do you remember that? Do you remember that? I don't recall that part of the transcript, Your Honor. You don't remember the record in colloquy in terms of the record that talked about that? Because it was touching because the first indictment did include resulting in death, right? So the plea making it clear that, but if this thing looks like it may go that way anyway, that you may have some room. Maybe I'm wrong. You should know. But you said it's not in the record. Nothing like that was in the record. What I recall from the colloquy is that, at least at the sentencing hearing where— This is not with the judge. Correct. With the judge. The judge said, I'm presuming that the party's engaged in this negotiation in order to avoid the 20-year minimum, which if there was a conviction under the death resulting. So that's my remembrance of the transcript on that point. Right. And he was sentenced that way, that resulting in death was not a part of it, right? Correct. Right. And now that you want to know, the BOP can say, well, we just think you did this. In the record that he did, it did happen. And so they can do that. We're not tethered to the law at all. But instead, they would become sort of the judge of that solely, notwithstanding what the language says or the ambiguity or the weakness or the inappropriateness or the not so well-written statute. Your Honor, we believe the warden's construction of the statute is permissible. It's a pragmatic approach that allows the BOP to look at egregious conduct. Do you think this court has a jurisdiction to say otherwise? I'm sorry, Your Honor. Do you think this court has the jurisdiction and the power to say otherwise, notwithstanding that's the Bureau of Prisons' view? Of course. Okay. I want to make sure. Can I just ask one factual question to make sure that I ask your colleague this? The judgment here refers to a superseding information. You could read that to say the second information. Am I correct in understanding that to be a reference to the superseding charging document, which is the loan information that is included here? Yes, Your Honor. The information was the superseding charging document. The court has no further questions. I would ask that this court affirm the judgment of the district court below. Thank you. Thank you, Mr. Nugent. Ms. Richmond, you have a little time reserved. Thank you. Just briefly, Your Honor, I want to start first with my colleague's twice-stated comment that the warden's reading of the statute is permissible. In this past summer, the Supreme Court ruled in Loeper-Bright overruling the Chevron Doctrine. And that case reasserts notions of jurisprudence, which are as old just about as the judiciary in our country, which is that it is a providence of the court to say what the law is. Do you have a view on what we now do with Skidmore? Do you believe that the BOP is entitled to Skidmore deference on this? And if so, what do you think that means? You don't have to have a view on that question, by the way, but if you do, I'd be interested in it. I do have a view, Your Honor. I think that even if Skidmore deference persists, the BOP's construction does not meet the test which is set out there, which is that the weight that the court should give a judgment in a particular case depends on the thoroughness, evidence, and its consideration, the validity of its reason, and its consistency with earlier and later pronouncements. And here I'm not seeing, either from the cases that my colleague cites nor in the submissions, all the traditional tools of statutory construction being used to support the government's reading. We also see inconsistency in how BOP is administering the statute. And in my submissions, I cited the case of two petitioners in Connecticut where BOP withdrew its finding of ineligibility, conceded that those people were eligible, they stood in the same shoes as my client, and those people had earned time credits. So because of the inconsistency, the lack of support, I would say they would be entitled to no deference under Skidmore. And they think that this court's job, as set forth in Loeb or Bright, is to determine the single best reading of the statute using all the tools of statutory construction. And here, doing so supports our reading of the statute. Judge Gregory, I want to circle back and briefly address the rule of lenity. And the applicability of the rule of lenity really turns on whether or not this is a penal statute. A penal statute is one that determines a prison term. In Barber, the Supreme Court assumed without deciding that the good time credit statute was penal. Here, First Step Act time credits are mandatory. If you meet the criteria in the statute, BOP must apply those credits, up to 365 days of them, to early release to supervision and the remainder to community confinement. So we would agree that if the court does find that. So just then judge, now Justice Sotomayor wrote an opinion in Sash where she said that the rule of lenity did not apply. She disagreed with the sort of approach you've taken. Do you think she's wrong there? And if so, do you have like why? Your Honor, I must confess I'm not familiar with that case. However, I do think that it will be important to reevaluate the rule of lenity in the context of statutes like this, prison credit statutes, post-Loper Bright. Because that was an additional layer that stood between the application of the rule of lenity and some of these prior cases where Chevron deference trumped getting to that point. She concluded in that opinion, as my recollection holds, that she was asking this question about whether Chevron or rule of lenity comes first. And she said rule of lenity comes first. And yet concluded that the good time credits were not a penal statute. And so the rule of lenity did not apply and then went on to Chevron. So it's a threshold question for her. If you don't know it, I'm not trying to get you to take a view on it. Well, we would disagree that it is not a penal statute and are happy to offer any supplemental briefing the court might want on that. The last thing I wanted to talk about was this idea that the warden should look to the type of conduct Congress was thinking of. And I think that when you look at the specificity and detail in this list of exclusions, that really breaks down. For instance, paragraph 22 makes people ineligible who are convicted of a 924C offense. And as this court is aware, 924C is carrying of a firearm in connection with a federal drug distribution offense. Now it is routine for people to not have a 924C conviction, but to be convicted under the Controlled Substance Act and to have a two-point enhancement under the sentencing guidelines for carrying a firearm in connection with. I'm not aware that BOP has taken the position that those people are ineligible. Congress worked really hard to be very specific in its list down to the provisions it was citing to give clear guidance to the BOP. And so the court should take that into account. The final point, oh, I'm sorry, I see that I'm running over. You may finish your final point. Thank you, Your Honor. The last point is that these are, as in my day job, I'm a trial attorney, and these exclusions are very present in the mind of the trial attorney during negotiations of plea dispositions because they do have a material impact on the case. Here, as your court referenced, this was a negotiated C plea to a range of 132 to 168 months. So certainly negotiate it with an eye to avoiding different consequences of the sentence. Thank you, Your Honor. Thank you, counsel. We'll come down and greet counsel and proceed to our next case.
judges: Roger L. Gregory, Julius N. Richardson, DeAndrea Gist Benjamin